IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOK COUNTY REPUBLICAN PARTY and CHICAGO REPUBLICAN PARTY, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO, et al., <br><br> Defendants. | Case No. 16 C 6598 |

**MEMORANDUM OPINION AND ORDER**

Cook County Republican Party and Chicago Republican Party (collectively the "GOP") filed this action under 42 U.S.C. § 1983 ("Section 1983") against the Board of Election Commissioners for the City of Chicago ("Board"), charging asserted violations of their First and Fourteenth Amendment rights. Frances Sapone ("Sapone") and Tammy Tenuta ("Tenuta") were also named as co-defendants to those charges.

In March 2016 the GOP -- concerned about infiltration by what it believed could be "carpetbagging" candidates for ward committeeman posts who were in fact Democratic operatives -- added this provision (hereafter "Section 3") to its bylaws shortly before the March 15 primary election:

> Section 3: A vacancy shall exist in the office of Republican committeeman in any ward or township in which an elected or appointed committeeman votes, or has voted, in the primary for another political party in the previous 8 years.

At that primary election Sapone and Tenuta stood for election as the Republican 29th and 36th ward committeemen respectively and -- unsurprisingly, for they ran unopposed -- received the

most votes in their wards. But because Sapone had voted in every Democratic Party's primary election during the eight years before the March 2016 Republican primary without having voted in any Republican primary during the same period, and Tenuta had also voted in a Democratic Party primary elections in the eight prior years, the Chairman of the Cook County Republican Central Committee declared those Republican committeeman offices vacant pursuant to Section 3.

At that same primary election no Republican candidate appeared on the ballot for the office of United States Representative for the 7th Congressional District. For such a vacancy to be filled, Illinois law (10 ILCS 5/7-61) requires the political party involved, among other steps, to hold a meeting to nominate a candidate. So on April 13 Republican ward committeemen from election precincts within the 7th Congressional District held a nominating meeting at which they selected Jeffrey A. Leef ("Leef") as their nominee for Congress. Though the 29th and 36th wards were included within the 7th Congressional District, the GOP did not notify Sapone and Tenuta of the meeting because of the Section 3 declaration that they did not validly serve as committeemen.

That decision by the GOP prompted Sapone to file an objection to Leef's nomination on grounds that she and Tenuta were entitled to notice of the April 13 meeting.[1] After an initial hearing, a Board hearing officer recommended that Leef be excluded from the ballot. Thereafter the GOP filed this action to enjoin further proceedings by the Board in No. 2016-EB-RES-01 (referred to as <u>Sapone v. Leef</u>) to obtain a declaration that Section 3 had validly excluded Sapone and Tenuta as ward committeemen. On July 12 this Court entered a temporary restraining order ("TRO") enjoining the Board from conducting further hearings or issuing any decision in <u>Sapone</u>

---

[1] It is undisputed that the Illinois election laws require notice to all actual committeemen.

v. Leef until further order of this Court.  Shortly thereafter the GOP filed for a preliminary injunction, which this Court granted after briefing by all parties.  After the preliminary injunction was issued, the Board ceased participation in these proceedings and took on the role of impartial observer, while the Sapone-Tenuta parties and the GOP filed abridged cross motions for summary judgment at this Court's request in anticipation of the November 2016 election ballot printing deadline.

On September 14 this Court granted summary judgment to the GOP, declaring Section 3 a valid bylaw that excluded Sapone and Tenuta as Republican ward committeemen and permanently enjoining the Board from conducting hearings in Sapone v. Leef.  Sapone has appealed this Court's decision that she and Tenuta are not committeemen, and that appeal is presently pending.  In the meantime the GOP has filed a motion for attorney's fees and costs under 42 U.S.C. § 1988 ("Section 1988") and the Board and the Sapone filed a separate response to that motion.

## **Legal Standard**

Section 1988 is a fee-shifting statute that provides a congressionally-mandated departure from the "American Rule" that each party pay its own attorney's fees and expenses regardless of the outcome of a case.  That section provides in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 or this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[2]

---

[2] For many purposes "costs" are treated as a term of art, bounded by the specific provisions of 28 U.S.C. § 1920 ("Section 1920").  But with Section 1988 classifying attorney's fees as part of "costs," the case law applying that statute has also included related out-of-pocket expenses as part of the award.  In this instance the only "cost" for which the Board seeks reimbursement is the $400 filing fee (see Section 1920(1)), but solely for convenience the bulk of this opinion will simply refer to "attorney's fees" in speaking of the total possible recovery.  On another issue of

Thus prevailing parties in a lawsuit brought under Section 1983 may recoup their attorney's fees from the losing party. Of course Section 1983 does not create a right of action against private conduct, except when private conduct takes on the color of law (<u>Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7</u>, 570 F.3d 811, 815 (2009)). Since the seminal opinion in <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961) established the principle that actions of a private individual to deprive another of their constitutional rights can become so entwined with state action that section 1983 imposes liability on the private actor, many cases have reconfirmed and applied that principle -- for example, <u>Hallinan</u>, 570 F.3d at 815-16 set out a laundry list of numerous cases doing so in various contexts. And Section 1988 does not specifically enumerate which parties may be held responsible for attorney's fees in Section 1983 cases, except that "it is clear that the logical place to look for recovery of fees is to the losing party" (<u>Kentucky v. Graham</u>, 473 U.S. 159, 164 (1985)).

Here there is no dispute that the GOP is the prevailing party, and it has indeed filed a petition to recoup attorney's fees. Both the Board and Sapone have raised three issues in response to the GOP's petition that are now before this Court:

1. whether the hourly rate of the GOP's attorney is reasonable and justified;

2. whether defendant Sapone is responsible for attorney's fees; and

3. whether and how fees should be apportioned between the Board and Sapone.

### **Hourly Rate**

First the Board challenges GOP attorney's hourly rate of $425, asserting that the GOP has not met its burden of establishing that the rate is commensurate with the prevailing legal market.

---

terminology, this opinion will adhere to the statutory term "attorney's fees" rather than the "attorneys' fees" alternative, employed in other statutes and cases.

But this Court is entirely satisfied that the opposite is true. Stephen Boulton ("Boulton"), attorney for the GOP, has provided a sworn declaration detailing his more than 30 years' experience as a lawyer, including 12 years' specialized experience in state and federal election law, and he has also submitted a declaration by Lori Yokoyama ("Yokoyama"), an equally experienced attorney, that attests the rate is in line with the general market rate. (B. Decl.; Y. Decl.).[3] In light of Boulton's years of specialized experience as well as the universally known escalation of the market rate for lawyers' work, $425 per hour is a modest rate for Boulton's legal services. Hence Boulton's hourly rate of $425 is approved.

### **Sapone's Responsibility**

Sapone claims that she was a "bystander" in this litigation and, as such, should not be responsible for reimbursing the prevailing party for attorney's fees. To support that proposition she advances three contentions:

> 1. She was not acting "under the color of law" and therefore should not be liable for attorney's fees in a case brought under Section 1983 (S. Resp. 2).[4]
>
> 2. As an objector to Leef's nomination, she was not a ful and active participant in this litigation (S. Resp. 3).
>
> 3. It would be unjust to stick her with fees because she does not have standing to appeal this Court's injunction against the Board (S. Resp. 4).

---

[3] Attorney Boulton's declaration, attached to the GOP's Petition for Attorney's Fees and Costs, is cited "B. Decl.," while attorney Yokoyama's declaration, attached to the GOP's Reply to the Board's Response is cited "Y. Decl."

[4] Sapone's Response to Plaintiff's Fee Motion is cited "S. Resp. --"

On that first claim Sapone asserts that she should not be liable for fees because she filed her objection as a private citizen rather than as a state actor. But that attempted distinction is highly questionable -- really myopic -- to begin with. It prefers to ignore the fact that Sapone's contention, the one that launched this controversy to begin with, is rooted in her claim that she is a ward committeeman, a position to which she ascribes governmental status. Yet she claims to shed that status when she seeks to take advantage of it by opposing Leef's standing as a congressional candidate. Whatever the criteria for acting "under the color of law" may be, hypocrisy is certainly not among them.

But even were that not the case, the mere label of "state actor" as such is not determinative of whether Sapone is liable for attorney's fees, because "section 1988 does not specify with particularity those who may be called upon to shoulder its fee awards." (Charles v. Daley, 846 F.2d 1057, 1063 (7th Cir. 1988)). In fact, "section 1988's paramount concern was to fashion the parameters of eligibility for fee awards, rather than to fix with precision the bounds of liability for such awards…" (id. at 1064)(emphasis in original).

Section 1988's winner-takes-all provision has as its goals to "provide[] an incentive for civil rights plaintiffs to bring lawsuits" (Charles, 846 F.2d at 1074) and "to make them whole after incurring substantial expenses in vindicating their constitutional rights" (id. at 1075). It would make little sense, then, to limit responsibility for attorney's fees to "state actors" only, for Sapone was targeted as a defendant in the lawsuit because she was a prime participant -- the moving force -- against the GOP, which was ultimately the prevailing party. It is entirely fair and reasonable to hold her liable to reimburse that prevailing party for the attorney's fees that were incurred in obtaining that success.

Sapone essentially seeks to recast that first contention in different garb in her second argument, this time by asserting that she should not pay attorneys' fees because her participation in this case amounts to that of "bystander and nothing but" (Moy v. Cowen, 958 F.2d 168, 170 (7th Cir. 1992)), and what has been said in the just-completed analysis should suffice to defeat that reframed contention as well.

But because Sapone attempts to pose that assertion as an independent ground to defeat the GOP's claim against her, an expanded treatment of that issue may be in order. At bottom Sapone's attempted recasting simply amounts to revisionist history. When the GOP filed suit in federal court to enjoin the Board from conducting further hearings, Sapone did not simply sit back and observe. Once again Sapone's motives are far from those of an innocent voter or concerned citizen -- as the GOP has convincingly demonstrated, Sapone became a purported Republican ward committeeman in order to prevent any real Republican from landing on the 7th Congressional District's ballot, a move that Section 3 was specifically designed to prevent (Compl. at 2, Dkt. 1). Once Sapone was named as a defendant along with Tenuta, she filed her own pleadings and briefings, including a response in opposition to the TRO and preliminary injunction (S. Resp. to Mot. for TRO and Prelim. Injunction, Dkt. 21) and a motion for summary judgment (S. Mot. S.J., Dkt. 60) -- moves on all of which the GOP prevailed.

In sum, in direct opposition to the GOP Sapone has consistently litigated the position that Section 3 is unlawful, that she is a legitimate Republican ward committeeman and that Jeffrey Leef should be excluded from the 7th Congressional District ballot because she and Tenuta were not notified of his nominating meeting. So Sapone has quite clearly shown herself to be a "fully participating part[y] … argu[ing] every issue with vigor equal to, or greater than the efforts of

the state defendants," a status that exposes her to liability for fees and costs under Section 1988 ((Charles, 846 F.2d at 1064)(internal quotation marks and citation omitted)).

Finally, Sapone's third argument asserts that it would be unjust to stick her with attorney's fees because she does not have standing to appeal this Court's injunction against the Board proceedings. It may be that she lacks standing to appeal that ruling (an issue that need not be resolved here) as to the injunction, but she has appealed this Court's declaration that she and Tenuta are not Republican ward committeemen. Further, she argued against both the injunction and declaratory judgment in her motion for summary judgment, and it is hardly feasible to parse the resources that GOP expended to counter one or the other arguments or both (Def. S. and T. Mot. for S.J., Dkt. No. 60). And once again, nothing in Section 1988 specifies that in order for a losing party to be responsible for attorney's fees, that party must be able to appeal the decision of the District Court. Indeed, the decision in Charles, 846 F.2d at 1073 expressly declined to absolve intervenors there of the responsibility to pay attorney's fees to the prevailing party -- and it did so even though the intervenors did not have standing to appeal, stating:

> Such a result would stand as a formidable impediment to the full achievement of the important objectives section 1988 was conceived and enacted to further.

In sum, Sapone's status as a private citizen, her role in this litigation and her lack of standing to appeal the injunction issued by this Court in no way relieve her of the responsibility to pay attorney's fees to the GOP, the prevailing party in this litigation. This opinion turns then to the relative responsibilities of the losing defendants for such payment.

## Apportioning Fee Amounts Between Defendants

As for the Board, because it asserts that its position was neutral for the bulk of the litigation, it asks this Court to apportion fees and costs between itself and Sapone based on the extent of their participation in the proceedings. Because it is true that the Board did not

participate in the summary judgment phase of this case, in fairness it should not be jointly and severally liable for all attorneys' fees and costs. But it was <u>not</u> a neutral bystander for the vast majority of this litigation, so it must bear responsibility for the extent of its involvement short of summary judgment.

On a separate issue, the Board contends that two other cases, filed in state court by other putative ward committeemen who challenged the validity of the Section 3 bylaw at issue here before the commencement of this case, could have been, but were not, removed to federal court (B. Resp. at 10).[5] As the Board would have it, Sapone -- who filed her objection with the Board, not in the form of a state court lawsuit -- is solely responsible for the fact that the Board was called before this federal court. But whether or not it believes that this case provided the most appropriate occasion to litigate the Section 3 issue in federal court, the Board must contend with the facts that (1) its own actions prompted the GOP to file this case and (2) that instead of remaining neutral (as it later did at the summary judgment stage) while the GOP and the Sapone-Tenuta duo duked it out on the Section 3 issue, it chose to play the role of an active advocate by participating against the GOP throughout the majority of the proceedings.

On that score the Board's hearing officer had recommended that Leef be excluded from the ballot after an initial hearing, following which the GOP filed this action (Prelim. Injunction Mem. Opinion and Order, 3-4, Dkt. 47). Then, during the course of this lawsuit, the Board filed a Response Memorandum to the GOP's Motions for a Temporary Restraining Order and Preliminary Injunction, arguing among other things that the GOP had no right to remove Sapone and Tenuta as ward committeemen (B. Resp. 9-10, Dkt. 19-1). So any argument that the

---

[5] Board's Response to the GOP's Petition for Attorney's Fees is cited "B. Resp. -- "

Sapone-Tenuta defendants bear sole responsibility for the Board's position as a defendant in this case lacks purchase entirely.

But to return to the question of comparative responsibly, it is quite true that the Board declined to participate when this Court requested abridged motions for summary judgment. According to Boulton's submission, beginning on August 29, 2016 his hours in this case were solely devoted to preparing and filing his summary judgment motion:

| Date | Description | Hours |
|---|---|---|
| 8/29/2016 | Review of cases and court opinions for Motion for Summary Judgment; | 1.20 |
| 8/30/2016 | Preparation of Motion for Summary Judgment and related research; | 2.10 |
| 8/31/2016 | Preparation and filing of Motion for Summary Judgment; Review of Defendants Motions; | 4.20 |
| 9/1/2016 | Appear for status call before the Hon. Milton Shadur | 0.50 |

Hence the Board bears no responsibility for those expenditures of time, which total $3,400 at a $425 hourly rate. But as to the time and the resultant fees related to the balance of the litigation, the Board and Sapone are jointly and severally liable.

## **Conclusion**

This Court awards to the GOP the petitioned-for amount of $24,795 in attorney's fees and costs. As just discussed, Sapone and the Board are jointly and severally liable for $21,395 of that amount, a figure that excludes the $3,400 in fees related to summary judgment (for which Sapone is solely liable).

_____
Milton I. Shadur
Senior United States District Judge

Date: December 22, 2016